Murphy v. Commonwealth.

---

Case 88—INDICTMENT—January 16.

## Murphy v. Commonwealth.

| 92 485 |
| 109 563 |

APPEAL FROM MAGOFFIN CIRCUIT COURT.

1. EVIDENCE OF INSANITY.—To authorize the admission of evidence of the insanity of the parents of one on trial for a homicide there must be other independent testimony to show he was himself insane at the time of the killing; but where the act of the defendant was without apparent motive, and at the same time unnatural and extraordinary, that is of itself sufficient evidence of insanity to authorize the admission of tetimony to show the insanity of defendant's parents.

2. SAME.—While proof of independent acts or conversation occurring subsequent to the commission of a crime are not sufficient to show insanity at the time, yet such evidence may be heard and considered

in connection with acts before or at the time of the crime which tend to establish the fact.

3. CONTINUANCE.—The defendant, who is unable to read or write, and entirely without friends to help him, or property or money with which to employ counsel to defend him (the attorney who is doing so being a volunteer from another county), should, upon his application, have been granted a continuance, it appearing from the affidavit that he had from the day of his arrest until the term at which he was indicted and tried been confined in the jail of another county; and that if afforded an opportunity he could prove certain facts, material to his defense, the importance of which he did not know until informed by his counsel. And the agreement of the attorney for the Commonwealth that the statements of the affidavit might be read as evidence did not authorize the court to refuse a continuance. But even if it did, the court erred in refusing to allow the affidavit to be read when subsequently offered as evidence.

WILLIAM LINDSAY FOR APPELLANT.

1. Under an indictment for murder the defendant may introduce evidence of the insanity of his parents if there is evidence in the case tending to prove personal insanity by reason of the want of apparent motive at the time of the homicide. (People v. Smith, 31 Cal., 466.)

2. The statement of the physician that he examined appellant a day or two after the killing, and that he was then insane, was competent evidence. (Commonwealth v. Pomeroy, 117 Mass., 143; Wharton on Crim. Law, 8th ed., sec. 64.)

KARN & HAYS ON SAME SIDE.

1. The court should have granted a continuance in order to give appellant time to prepare his defense. (Crim. Code, sec. 189.)

2. It was error, after the Commonwealth had admitted the statements of the affidavit to be true, to refuse to permit it to be read to the jury. (Young v. Commonwealth, 8 Bush, 366.)

3. What effect the testimony as to hereditary insanity would have had upon the minds of the jury can not be determined, and therefore it can not be said that the refusal to allow it to go to the jury was not prejudicial. (Embry v. Commonwealth, 11 Ky. Law Rep., 515.)

W. J. HENDRICK, ATTORNEY GENERAL, FOR COMMONWEALTH.

As no proof was offered of the condition of defendant's mind before or at the time of the killing, testimony as to the insanity of his parents was incompetent.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, Logan Murphy, about nineteen years old, has been convicted and sentenced to be hanged for mur-

der of his father, Isaac Murphy, at whose house he, though married about six weeks previously, was at the time living.

According to the evidence, of which their is no contrariety, about dark the day of the homicide appellant, accompanied by his brother-in-law, returned home, bearing a turkey that he had killed while away, and which he asked to be cooked. In the language of witnesses he and his father had "some words," and he then went out of the house and sat down, where he staid about a half hour, and then came to the door of the house, when his step-mother told him to come into the house and act like a man, to which he replied, he was waiting for his father to ask him in, and upon the deceased responding he could do as he pleased—come in or stay out—appellant presented a pistol and fired the shot which caused death in a few moments.

What were the words deceased and appellant used does not appear, nor does it clearly appear what was the subject or occasion of them, but it may be inferred from the conduct of appellant in leaving the house he was offended at his father. There is no evidence whatever that deceased made any demonstration or threat of violence to appellant. On the contrary, when shot he was sitting in a chair, his arm being on the back of it, and his head resting on his arm, and was not even looking towards appellant. As the record stands the killing appears to have been done deliberately, without provocation, excuse or even warning, and must be regarded an act comprising all the elements of murder, and punishable as such unless appellant was at the time a lunatic. And the only ground relied on for reversal is assumed error of the lower court

in refusing a continuance to enable appellant to obtain
attendance of witnesses to establish that fact, and in sus-
taining objection to evidence offered on the trial for that
purpose.

It appears that the killing occurred about the first of
September, 1891, and the indictment was found and the
case called for trial at October term of the court, when
motion was made for continuance based on an affidavit
in which was made in substance the following statement :
That from the day of his arrest until indicted appellant
had been confined in the jail of another county, and un-
able to prepare for his defense ; that he is unable to read
or write, and entirely without funds to aid, or property
or money with which to employ counsel to defend him ;
the attorney who is doing so, being a volunteer from an-
other county and a stranger in the county where the trial
was being had ; that if an opportunity is afforded he can
prove that his mother has for fifteen years been confined
in a lunatic asylum, and at times is very violent ; his grand-
father was partially deranged and violent, a cousin was
also insane and violent for twenty years and is now in a
lunatic asylum, and two other cousins whose names are
given are insane.   He further stated that at the time of
killing he was in bad health and does not now remem-
ber the circumstances under which the homicide occur-
red, and did not, until informed by his counsel, know the
necessity of the testimony mentioned, and being confined
in jail could not have produced it upon the trial.

It appears that when the motion for continuance was
made the court announced the case would be continued
unless the attorney for the Commonwealth agreed to ad-
mit the facts disclosed in the affidavit, subject to being

relevant and competent, which he did do, and thereupon the motion for continuance was overruled. But for reasons we do not understand, the objection of the attorney for the Commonwealth to the affidavit when offered on the trial was sustained, and no part of it was permitted read to the jury. It further appears that appellant introduced as his only witness a physician of forty years' practice who, it was in writing averred, would testify he had seen, examined and conversed with appellant one or two days after the killing, while he was under arrest, and that in the opinion of the witness he was mentally deranged, but that evidence was also excluded.

Although it is manifest appellant was forced into trial without having reasonable time and opportunity to prepare for his defense, still, unless the facts which he stated in his affidavit he could establish by absent witnesses, are relevant and competent, and tend to support his defense of insanity, the only one as the record now appears he could have had, there was no error in refusing to continue the case. It seems to be a settled rule that in order to make competent and relevant evidence of the insanity of parents of one on trial for homicide, there must be other independent testimony tending to show he was himself insane at time of the killing. No evidence was introduced in this case for the purpose of showing that appellant was at the time he shot his father insane, which omission may, or not, have resulted from his inability and want of opportunity, of himself or any one for him, to prepare his defense. But however that may be, the simple question before us is, whether the manner and circumstances under which the act was done are of a character authorizing a reasonable inference that the

homicide was committed under the influence of insanity. No motive for the unnatural act appears in the record, for there is a total absence of proof of previous ill-feeling between father and son, and of any incentive or reason that would influence a sane person to commit such deed. While, therefore, hereditary insanity is not of itself sufficient to show insanity of a particular member of a family, or should be regarded as conclusive, or even persuasive, of a criminal act having been committed under influence of insanity, that may be consistent with sanity, still, as said by Chief Justice Gibson in the Arrowsmith Case (Smith v. Kramer, 1 Am. Law Reg., 353), "there is nothing unreasonable in referring wild, furious and unnatural actions not otherwise accounted for to the aberrations of a mind the reflex of that of the parent." (See People v. Smith, 31 Cal., 466; Wharton & Sills' Med. Jur., section 373.)

It seems to us that as the homicide in this case is without any apparent motive, and at the same time unnatural and extraordinary, the jury might as reasonably infer insanity therefrom as from any other act or speech which may be referred to that cause, and, therefore, evidence of insanity of appellant's parents was competent and relevant, and the lower court erred in the first place in refusing a continuance to give appellant an opportunity to produce such evidence; and, secondly, in refusing to permit the affidavit read as evidence after having overruled the motion for continuance. We think the court also erred in sustaining objection to the evidence of the physician, for while proof of independent acts or conversation occurring subsequent to the commission of a crime would not be competent to show insanity at the time, yet such evidence may be heard and considered in connec-

tion with acts before or at the time of the crime which tend to establish the fact, and especially is the opinion of an expert, formed under the circumstances, stated by the physician in this case.

Judgment reversed for a new trial consistent with this opinion.