## Lucas v. Commonwealth.

(Decided September 26, 1912.)

### Appeal from Fayette Circuit Court.

Criminal Law—Trial—Argument of Counsel, Limiting Time Of.—Limiting the time of counsel for argument to the jury is left to the sound discretion of the trial court, and only abuse of that discretion will authorize a reversal. Where the evidence adduced presents no complicated circumstances, necessitating detailed or elaborate explanation in order to make them intelligible to the jury, even though the witnesses are numerous, there was no abuse of discretion in limiting argument to thirty minutes to each side.

J. FRANKLIN WALLACE for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Ed Lucas was indicted in the Fayette Circuit Court for the murder of James Keyes. Upon trial, he was found guilty and given an indeterminate sentence of two to twenty-one years in the State penitentiary. In the motion for a new trial in the lower court, several grounds were assigned, but here counsel for appellant seeks a reversal solely upon the ground that the trial court erred, to his client's prejudice, in limiting him in argument to thirty minutes. It is insisted that, in presenting the defense for one charged with murder, the time

allowed was so grossly insufficient to enable counsel properly to present the case to the jury, that a reversal should be ordered.

This same question has been several times presented and passed upon by this court. In the leading case of Combs v. Commonwealth, 97 Ky., 24, the trial court limited the time for argument to three hours a side. Conceiving that that time was insufficient to enable him properly to present his client's defense, counsel for the accused sought a reversal here. In passing upon the question this court, speaking through Judge Lewis, said:

"What length of time the ends of justice and rights of an accused party require should be allowed for argument to the jury on a criminal trial must from necessity be generally left to the sound discretion of the trial court; otherwise, an undue portion of the time of a court might be needlessly consumed in trial of one cause, to detriment of other business and rights of other parties. Therefore, this court will not reverse upon the ground too short time was allowed, unless satisfied that discretion had been abused. Counsel were allowed in this case three hours to each side, which, the contrary not appearing, we must conclude was not so short time as to prejudice substantial rights of appellant."

In the more recent cases of Scott v. Commonwealth, 148 Ky., 80, and Stout v. Commonwealth, 148 Ky., 199, the rule announced in the Combs case was adhered to and reaffirmed, in the case of Stout, this court holding:

"We have ruled in a number of cases that the time that shall be allowed for argument is a matter in the discretion of the trial judge, and that unless it affirmatively appears that this discretion has been abused to the prejudice of the accused, it will not amount to a reversible error. * * * * The trial court should, of course, allow counsel for the accused in every case reasonable time and opportunity to present the reasons why there should be an acquittal, but it is obvious that the time that should be allowed depends upon the facts and circumstances of each particular case. It is not to be altogether regulated by the number of witnesses that are introduced, as a very complicated state of facts might be presented by the testimony of a single witness. It is rather to be controlled by the simplicity of the facts and circumstances surrounding the transaction."

Applying that test to the case at bar, was the time allowed for argument sufficient to enable counsel properly, fairly and fully to present his client's case to the jury? While quite an array of witnesses was introduced, they testified with remarkable unanimity to the material facts. Indeed, there is practically no disagreement among them as to what took place, save·that the defendant himself testified that at the time he fired the fatal shot, the deceased was advancing upon him in a threatening manner, with a razor in his hand, and that he fired in self defense. The Commonwealth proved by all of its witnesses, and the defendant admitted, that in the afternoon of Sunday, December 31, 1911, the appellant went to the home of one Charles Keyes and asked to see Lucy Roberts. When she came in and asked what he wanted, he drew a pistol from his pocket, whereupon she screamed· and ran from the room; that he followed her out through the back ˙door and around to the front of the house, when she ran into the front door, and it was barred against him. He went off down the street some little distance, remained a time, and apparently started to leave, when Jerry Roberts, who was in the house of Charles Keyes, · went out, whereupon appellant fired several shots at Roberts. Roberts returned this fire. Still later, James Keyes, who was also in the house, announced his intention of going home, which was in the direction appellant was going. He left the ·house and, as he approached appellant, he was ordered by appellant to stop or go back. He announced that he was not bothering appellant and continued in the direction of his home, also toward appellant who was in the street in front of him. Thereupon appellant fired two shots, and upon the firing of the second shot, Keyes seized appellant, threw him to the ground and held him there until Charles Keyes came out of his house and went to where they were. Charles Keyes took the pistol·from appellant and pulled James Keyes off of him, whereupon appellant attempted to assault Charles Keyes, who, after throwing the pistol which he had taken from appellant at him, retreated toward his house, followed by appellant. James Keyes was taken to the hospital, found to be mortally wounded and died either that or the succeeding day. Appellant was cut about the neck or face with a knife or razor, and was also bruised in the face by a blunt instrument, pre-

sumably the pistol which was thrown at him by Charles Keyes. He admits firing the shots, but states, in justification for so doing, that James Keyes was then advancing upon him with a razor. The overwhelming weight of the evidence is that James Keyes was at the time going home, and was not offering to do any violence whatever to appellant. All the witnesses agree that he was going in the direction of appellant, and all likewise testified that that was toward his home, where he had announced his intention of going. The trial was entered upon about eleven o'clock in the morning, the jury selected, the case stated and the evidence all heard by five o'clock in the afternoon of the same day. The evidence brought out no complicated circumstances or facts, necessitating detailed or elaborate explanation in order that the jury might understand them, hence there was no necessity for prolonged argument. Under the facts in this case, we are of opinion that there was no abuse of discretion in limiting the argument to thirty minutes to a side.

Judgment affirmed.