## Winburn v. Commonwealth.

(Decided June 18, 1918.)

### Appeal from Carroll Circuit Court.

1. Criminal Law—Change of Venue—Denial—Hearing of Motion—Presumption That Evidence Was Introduced—Absence of Evidence—Review.—Where the record shows that the motion of the defendant for a change of venue came on for hearing and was heard, and the court being advised, overruled the motion, it will be presumed, in the absence of anything to the contrary, that evidence was introduced and considered by the court, and in the absence of the evidence from the record, the Court of Appeals can not review the propriety of the trial court's action in refusing the change of venue.

2. Criminal Law—Homicide—Insanity in the Family of the Accused—Evidence—Admissibility.—To authorize the admission of evidence of insanity in the family of the accused, there must be other independent evidence to show that he was himself insane at the time of the homicide.

3. Criminal Law—Homicide—Insanity in the Family of the Accused—Evidence—Admissibility.—Evidence of insanity in the family of the accused was not admissible where there was no preliminary independent evidence that the accused was insane at the time of the homicide, and the offered evidence was not accompanied by an avowal that it would be followed by such independent evidence.

4. Criminal Law—Defects—Verdict—Manner of Curing—Error.—Where on a trial for homicide, the jury found the defendant guilty and fixed his punishment at "ninety-nine years without a pardon," the trial court did not err in sending the jury back to the jury room to correct its verdict, since it is the correct practice where the verdict is not sufficiently specific or does not conform to the law, to have the jury reform its verdict before it is discharged.

5. Criminal Law—Verdict—Surplusage.—A verdict of guilty and fixing the defendant's punishment "at confinement in the State penitentiary for life without pardon," is not rendered invalid by the use of the words "without pardon," since they constituted a mere recommendation which the court had the right to disregard as surplusage.

6. Criminal Law—Homicide—Verdict—Sufficiency.—The punishment for murder being death or imprisonment for life, a verdict finding one indicted for murder guilty and fixing his punishment at life imprisonment is a sufficient verdict, though subsection 2, section 257, provides that the verdict of guilty shall fix "the offense and the degree of the offense."

7. Criminal Law—Homicide—Trial—Instructions—Construing.—On a trial for homicide, an instruction making the defendant's right of self defense depend on the danger as it appeared to the jury instead of on the danger as it appeared to him, was not error where the defendant's right to shoot and wound the deceased in order to avert the danger as it appeared to him, was fully covered by the instruction on self defense.

8. Criminal Law—Trial—Evidence—Sufficiency.—Where the preponderance of the evidence tends to show that the defendant was guilty of murder, it can not be said that a verdict finding him guilty, and fixing his punishment at life imprisonment, is flagrantly against the evidence.

FRANK C. GREENE and SCOTT & HAMILTON for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is an appeal by James Winburn who was convicted of murder and given life sentence.

The homicide occurred at the ball park in Carrollton. Besides appellant and the deceased, Albert Collins, Hugh Arvin, Thomas McDermott and Roy Ellis were present. According to the evidence for the Commonwealth, appellant and Collins were engaged in a game of craps, and appellant won all the money that Collins had. Collins then borrowed a dollar from McDermott and the game was changed from craps to cards. In this game appellant lost not only what he had won, but all the other money that he had. Thereupon appellant told McDermott, who was sitting near, that he owed him $1.25, and demanded that McDermott pay him. McDermott claimed that he did not owe appellant any money but had paid his board to appellant's wife. Appellant then slapped McDermott over and Collins remonstrated with him and told him that they did not want to have any trouble. Appellant drew his pistol and told Collins that he was as good a man as he was and would fill him full of holes. He then shot and killed Collins. According to the evidence for appellant, he had won some money that lay on the ground. When he went to draw in the money Collins stamped him on the hand and kicked him on the chest. He then saw his life was in danger and fired the gun. It further appeared that appellant was a cripple and had been operated on several times.

The first error assigned is the refusal of the court to grant appellant a change of venue. His application was based on the claim that it was necessary to remove him to an adjoining county to escape mob violence, and that the feeling against him in Carroll county was such that he could not obtain a fair trial there. His application was supported by his own affidavit, and the affidavits of two residents of Carroll county. It is insisted that appellant was entitled to a change of venue because his application and the supporting affidavits were sufficient, and it does not appear that they were denied. The record, however, shows that the following order was entered:

"The motion of the defendant for a change of venue coming on for hearing and heard, and the court being advised, overruled the said motion, to which ruling of the court defendant excepted."

Since this order shows that a hearing was had on the motion it will be presumed, in the absence of anything to the contrary, that evidence was introduced and considered by the court. The evidence, however, does not appear in the record, and in the absence of the evidence, we can not review the propriety of the court's action in refusing the change of venue.

Another error relied on is the refusal of the court to permit appellant to prove that his mother and other relatives were insane. To authorize admission of evidence of insanity in the family of the accused, there must be other independent testimony to show that he was himself insane at the time of the homicide. Murphy v. Commonwealth, 92 Ky. 485, 18 S. W. 163; State v. Cunningham, 72 N. C. 469; Bradley v. State, 31 Ind. 492; Laros v. Commonwealth, 84 Penn. St. 200; People v. Smith, 31 Cal. 466; Snow v. Benton, 28 Ill. 306; Guiteau's Case, 10 Fed. 161. In discussing the question in the case of State v. Cunningham, *supra,* the court said:

"When a foundation is laid by some evidence tending to show insanity in the prisoner, it is held admissible in corroboration, and as an additional link in the chain of circumstances, to give in evidence a heredity taint in the blood of a like malady. But it has never been held in this state or elsewhere, so far as our researches extend, that such evidence is admissible by itself, and without some testimony that the prisoner himself was affected by some form of mental alienation. To allow such evidence to go to the jury as independent proof of the insanity of the prisoner would be of the most dangerous consequence to the due administration of criminal justice, since there are but few persons, it is ascertained, who have not had ancestors or blood relations, near or remote, affected by some degree of mental alienation."

Here there was no preliminary independent evidence tending to show that appellant was insane at the time of the homicide, nor was the offered evidence of insanity in his family accompanied by an avowal that it would be followed by such independent evidence. It therefore follows that the offered evidence was not admissible.

The jury first returned the following verdict:

"We the jury find the defendant, Jim Winburn, guilty and fix his punishment at ninety-nine years without a pardon." Thereupon the court sent the jury back to the

jury room to correct its verdict. The jury returned from the jury room with the following verdict:

"We the jury find the defendant, James Winburn, guilty and fix his punishment at confinement in the state penitentiary for life without pardon."

It is well settled that if the verdict is not sufficiently specific or does not conform to the law, it is the correct practice to have the jury reform its verdict before it is discharged. Williams v. Commonwealth, 140 Ky. 34, 130 S. W. 807; Denham v. Commonwealth, 119 Ky. 508, 84 S. W. 538. The trial court did not err, therefore, in sending the jury back to the jury room to correct its verdict. John Crockett v. Commonwealth, 100 Ky. 389.

But it is argued that the verdict was unauthorized, because no statute gives to the jury the right to fix such an unusual punishment. In this connection it is argued that the jury might not have agreed upon a verdict at all if the trial court had required them to eliminate from the verdict the words "without pardon." If speculation of this kind be proper, we might say, with equal plausibility, that the jury might have inflicted even a higher penalty had they not felt free to incorporate the words complained of in the verdict. However this may be, we conclude that the incorporation in the verdict of the words "without pardon," did not invalidate the verdict, but constituted a mere recommendation which the court had the right to disregard as surplusage. This has been the uniform rule respecting verdicts otherwise proper but containing recommendations of the accused to the leniency of the court, State v. Overton (N. J.), 88 Atl. 689; People v. Lee, 17 Cal. 76; State v. Stuart, 9 Nev. 120; Penn v. State, 62 Miss. 450; State v. Rosa, 26 La. Ann. 75; State v. Newman, 49 W. Va. 724, 39 S. E. 655, and if a favorable recommendation may be rejected as surplusage, we perceive no reason why an unfavorable recommendation may not also be rejected.

In this connection the point is also made that the verdict does not conform to subsection 2, section 257, Criminal Code, providing that a general verdict upon a plea of "not guilty," is "guilty," or "not guilty;" and if "guilty," fixing the offense and the degree of the offense and the punishment in cases in which the jury is required to fix the degree of punishment. While it is true that the jury did not in terms find the appellant guilty of murder, yet they were told that if they found

him guilty of murder, they should fix his punishment at death or confinement in the penitentiary for life. By fixing his punishment at life imprisonment, which they were not authorized to do unless they found him guilty of murder, it is certain from the verdict that the jury intended to find, and did, find him guilty of murder, and the mere failure of the verdict to state in terms that such was their finding can not be regarded as prejudicial error. Hays v. Commonwealth, 12 Ky. Law Rep. 611, 14 S. W. 833.

Instructions Nos. 1 and 4 are as follows:

"No. 1. The jury is instructed that if you shall believe from all the evidence in this case, beyond a reasonable doubt, that the defendant, James Winburn, in this county and before the finding of this indictment herein, wilfully, feloniously, and of his malice aforethought, and not in his necessary or in his reasonably apparent defense, so shot and wounded Albert Collins as that he then and there died thereby, then he is guilty of willful murder, as charged in the indictments, and you ought to so find and fix his punishment at death or at confinement in the state penitentiary for life, in the reasonable discretion of the jury."

"No. 4. If the jury believes from the evidence that at the time the defendant, Jim Winburn, shot at and wounded Albert Collins, so that he died thereby, if he did so do, he believed and had reasonable grounds to believe, that he was then and there in danger of death or the infliction of some great bodily harm at the hands of said Albert Collins, and that it was necessary or was believed by the defendant in the exercise of reasonable judgment to be necessary to so shoot and wound the deceased in order to avert that danger, real or to the defendant apparent, then you ought to acquit defendant upon the ground of self defense or apparent necessity therefor."

Instruction No. 1 is complained of because appellant's right of self defense was made to depend on the danger as it appeared to the jury instead of on the danger as it appeared to him. It will be observed, however, that appellant's right to shoot and wound the deceased in order to avert the danger as it appeared to him, was fully covered by the instruction on self defense. Since the two instructions should be read and considered together,

it is apparent that the alleged defect in instruction No. 1 was cured by instruction No. 4.

Since the preponderance of the evidence tends .to show that appellant was guilty of murder, it can not be said that the verdict is flagrantly against the evidence.

Judgment affirmed.