## Mannin v. Commonwealth.

(Decided December 18, 1925.)

### Appeal from Morgan Circuit Court.

1. Criminal Law—Refusal of Continuance for Lack of Opportunity for Consultation of Accused With his Attorneys Held Not Abuse of Discretion.—In prosecution for homicide, refusal of continuance for lack of opportunity for accused to consult with his attorneys, in view of fact that for almost two months attorneys had ample opportunity to visit him, was not abuse of discretion.

2. Criminal Law—Refusal of Continuance for Absence of Witnesses Held Not Abuse of Discretion.—In prosecution for homicide, where court permitted accused to read to jury what absent witnesses would have testified to, if they had been present, in view of fact that state's witnesses testified to practically same thing, refusal of continuance for absence of witnesses was not abuse of discretion

3. Criminal Law—When Refusal of Continuance, Because of Absence of Material Witness is Error, Stated.—Where reasonable opportunity for preparation is shown, it is not error to refuse to continue proceeding, unless affidavit therefor states some material fact that could be established by an absent witness, or discloses some relevant or competent circumstance that could be proved in event of a continuance.

4. Criminal Law—Ruling on Continuance in Discretion of Trial Court, and Rulings will Not be Disturbed, Save for Abuse.—Application for continuance is addressed to sound discretion of trial court, and its rulings thereon will not be disturbed on appeal, in absence of showing of abuse of discretion.

5. Criminal Law—Limiting Argument by Accused's Attorneys to 1¾ Hours Held Not Abuse of Discretion.—In prosecution for homicide, where Commonwealth introduced only eleven witnesses, of whom only three testified about turning points in case, and rest of witnesses agreed with testimony of accused concerning other matters, and accused produced only himself as witness on crucial issue, which was very sharp, allowing accused's two attorneys only 1¾ hours for argument, to be divided between them, was not abuse of discretion.

WAUGH & HOWERTON and CLAY & HOGGE for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

On Saturday, July 26, 1924, a church revival was being held in a schoolhouse in Elliott county, Kentucky. The services took up a little after dark and the schoolhouse was well filled. Attending these services were Warner and his brother, Preble Green, Ollie and his brother, Cottle Mannin, the appellant herein. Ollie had married a sister of the Greens but she and he had separated in the previous April. There seems to have been some ill feeling at this time between the Greens and Ollie. Ollie and Cottle had not gone to the services together nor by any agreement. They did not even sit together. During some singing, Ollie got up and went out of the house into the yard. A little bit later the two Green boys went out and sat on the stoop in front of the schoolhouse. This stoop was a small porch elevated some two or three feet from the ground. While the Green boys were sitting on the stoop, Ollie came up from the yard and seated himself nearby, remarking as he did so: "I am the best God damned man on the ground." At this Warner jumped up, came around to where Ollie was seated and said: "Take off your glasses and I will show you." Ollie arose, and as he did so drew his Colt's revolver. When Ollie started to draw his revolver both of the Green boys, who, it is fairly well established by the evidence, were unarmed and in their shirt sleeves, grabbed him. The gun went off, the bullet going into the floor of the porch. At this moment Cottle, who was then inside of the house, got up to go out and take a walk. He appeared on the porch just about the time the gun went off, whereupon he, too, jumped into the fight. In the struggle all four men fell off the porch on to the ground. While they were all mixed up on the ground another shot was fired and Cottle received a scalp wound on the side of his head. He says he does not know who fired this shot, but thinks it was Preble Green. The probabilities are that it was a shot from Ollie's gun which was being fired in the melee. While the four men were wrestling on the ground, Ollie seems to have lost his gun. He and Preble Green then separated from the other two and struggled over to the edge of a little woods where some logs were lying. Up to this point there is not much dispute in the evidence, but from here on the parties differ radically as to what happened. The Commonwealth claims that as Ollie and

Preble moved away towards the woods, Warner Green arose from the ground and was standing with his back to the schoolhouse; that he looked around and saw Cottle, who had in the meantime drawn his Smith & Wesson, standing in front of him and pointing the gun toward him; that he begged Cottle not to shoot him, but that Cottle, despite his pleas, deliberately fired his gun twice into him, killing him immediately. On the other hand, Cottle claims that when he got up off the ground Warner Green then had a gun in his hand, presumably the one Ollie had dropped; that Warner then fired and shot him through the arm, whereupon he shot and killed Warner in what he believed to be his necessary self-defense. It is admitted that Cottle was shot through the arm, but the Commonwealth claims that the wound made in the arm could not have been inflicted as Cottle claims without the bullet going through Cottle's body. In support of this contention it produced a physician who attended Cottle on the day after this trouble and who testified that when he asked Cottle how he got such a wound without that bullet going through his body, Cottle replied that he had his arm around somebody when he received the shot. Cottle did not deny this statement. From this it is argued that Cottle received his wound at the time when all four men were fighting on the ground just after they fell off the porch and when Ollie was firing his gun. After Cottle had killed Warner he rushed over to where his brother Ollie and Preble Green were fighting. He here tried to shoot Preble but was disarmed by some third parties before he accomplished his purpose, but not before he was hit on the head by a rock thrown by Preble. On the intervention of the third parties, the fight came to an end. Cottle then went back into the schoolhouse and in the presence of several people stated: "I got one of the s-b's." He does not deny making these statements but says that on account of the conditions of his wounds in the head and arm he was so addled that he did not know what he was saying.

Appellant was arrested on the following Monday, charged with the murder of Warner Green. Due to the fear of the high feeling against him then prevailing in Elliott county, he was removed to Winchester, in Clark county, for safekeeping. Here he remained until his case was called for trial on September 10, 1924, in Morgan county, where his case had been sent on a change of venue, except for a short period on the 5th and 6th of

August, during which he was in Elliott county for the purpose of answering the indictment found against him. At no time prior to his trial did he make any effort to procure bail. Some time before August 5th, Mr. James Clay, of Morehead, Kentucky, was employed to defend the appellant and some time thereafter Mr. John Waugh, of Ashland, was likewise so employed. When the appellant was in Sandy Hook, the county seat of Elliott county, to plead to the indictment against him, Mr. Clay was also there, but he does not seem to have had any extended interview with his client. When his case was called for trial in September, appellant moved for a continuance on the ground that he and his counsel had had no opportunity to confer with one another, or to prepare the case for trial, or to interview the witnesses, and that certain witnesses whom he had summoned were not present to testify. He set forth in his affidavit for the continuance what these witnesses would say if present. He also filed supporting affidavits of his counsel. The Commonwealth filed a counter affidavit and on this proof the court overruled the motion for continuance. The case proceeding to trial, appellant was found guilty of voluntary manslaughter and sentenced to eight years in the penitentiary. From this judgment he appeals.

The first ground relied on for a reversal is the failure of the trial court to grant appellant the continuance he asked for. The proof shows Mr. Clay, who is an attorney for the C. & O. railroad, lived at Morehead, between which town and Winchester, a distance of only 47 miles, this railroad runs. It was far easier for Mr. Clay to interview his client at Winchester than it would have been to go to Sandy Hook or West Liberty for the same purpose. Mr. Waugh lived at Ashland, 106 miles east of Winchester and on the same line of railroad. There is no satisfactory showing in this evidence why these two attorneys, during the period of almost two months which elapsed between the commission of the homicide and the time of the trial, could not have gone to Winchester and had all the interviews with their client necessary to properly present his defense. The record of this trial shows, and the result of it demonstrates, that they did all that skilled counsel could have done with the facts they had to work with. It is not shown that any different showing of facts could have been made had the continuance been granted. The court permitted appellant to, and he did, read to the jury what his absent witnesses would have tes-

tified to had they been present and testifying. It may be said that the Commonwealth's witnesses themselves had already testified to practically the same thing as stated by these absent witnesses. There was really no dispute on either side as to what happened on this occasion except whether appellant shot deceased when the latter was unarmed and begging him not to do so, or only shot him after Warner had fired upon him. The facts of how the trouble started, that appellant did not come out of the schoolhouse until it had started, and that he was wounded both in the head and arm, everybody on both sides admitted. There were very few people out in the yard who saw what happened at the moment of the fatal shot, and we do not see how appellant could have any more or better preparation than he did have in this case. The matter of granting a continuance for the reasons here urged rests in the sound discretion of the court. In Piercy v. Commonwealth, 195 Ky. 725, 244 S. W. 52, we said:

"These cases, and others that might be cited, enunciate a principle that has been uniformly adhered to in this jurisdiction, i. e., that the substantial rights of the accused must be protected with reference to the time of trial, as well as in the course of trial, and that the right of accused to be represented by counsel necessarily carries with it the right of counsel to have a reasonable time and opportunity to study the case in its various aspects, and properly prepare it for trial. These rights are indisputable, and should always be protected by the courts. . . .

"While it has been uniformly and justly held that the right to a fair trial involves the right of a reasonable time in which to prepare for trial and to present all available defenses, it is also well settled that a judgment will not be reversed for refusing to grant a continuance if it does not appear that the substantial rights of the accused have been violated by reason of the denial of the motion. The record in this case discloses no fact indicating that the accused was not as well prepared for trial at the February term as he would have been at a subsequent term. Where reasonable opportunity for preparation is shown, as in this case, it is not error to refuse to continue the proceeding unless the affidavit for a continuance states some material fact that could be established by an absent witness, or discloses some relevant or competent circumstance that could be

proved in the event of a continuance. Murphy v. Commonwealth, 92 Ky. 485, 18 S. W. 163, 13 Ky. Law Rep. 695; McDaniel v. Commonwealth, 181 Ky. 766, 205 S. W. 915; Watkins v. Commonwealth, 149 Ky. 26, 147 S. W. 947. An application for a continuance is a matter addressed to the sound discretion of the trial court, and its rulings on such questions will not be disturbed, in the absence of a showing that the discretion has been abused. Caudill v. Commonwealth, 155 Ky. 578, 159 S. W. 1149; Kelly v. Commonwealth, 165 Ky. 483, 177 S. W. 249.''

Under the rule in this case, we do not believe that the court abused a sound discretion in refusing to grant the continuance asked for.

It is next insisted that the trial court committed error in the reception of testimony, three such alleged errors being pointed out. We have carefully considered them and do not regard any of them of any moment.

It is lastly contended that the lower court erred in limiting the time of argument of counsel for appellant. The court allowed them 1¾ hours. They stated that each of them wished to argue this case and to cover it all and that they could not do it by splitting this time between them. It can not be pretended that 1¾ hours was not an ample time within which to adequately present appellant's case. The Commonwealth introduced only eleven witnesses. Of these there were only three who undertook to testify about the turning points in the case. The rest of the witnesses agreed with the testimony of the defendant concerning the other matters. The crucial issue was very sharp. Defendant produced only himself on this issue. Under such circumstances, the time allowed for argument was ample. Of course, if the defendant chose to split his time up among a number of lawyers, that was his privilege, but he was entitled only to a reasonable time for the argument of his cause—not a reasonable time for every lawyer he might wish to defend him. In the case of Lucas v. Commonwealth, 149 Ky. 495, 149 S. W. 861, we held that the trial judge did not abuse his discretion in limiting the accused's counsel's argument to thirty minutes where the evidence brought out no conflicting circumstances or facts necessitating detailed or elaborate explanation. The case before us is not essentially different in this respect from this Lucas case, and we conclude that ample time was afforded appellant

within which to present his cause. The trial court did not abuse its discretion in declining to give appellant more time.

These are all the errors complained of, and as there is no merit in any of them, the judgment of the lower court is affirmed.