## Cox v. Commonwealth.

(Decided June 4, 1926.)

### Appeal from Floyd Circuit Court.

1.  Criminal Law.—Alleged errors set out in motion for new trial as ground therefor must be treated as waived, where not discussed in brief.

2. Criminal Law—Photograph of Deceased, Showing Disposition Contrary to that Claimed when Killed by Defendant, Held Incompetent.—In prosecution for killing young man claimed disorderly, photograph of deceased showing him of pleasing appearance, perfectly sober, in good humor, and well dressed, held incompetent.

3. Criminal Law—Improper Introduction of Photograph of Deceased, Showing Disposition Contrary to that Claimed when Killed by Defendant, Held Not Prejudicial.—In prosecution for killing young man claimed disorderly, improper introduction of photograph showing him of pleasing appearance, perfectly sober, in good humor and perfectly dressed, held not prejudicial, where state might have proved such facts by other witnesses.

4. Homicide.—Evidence held to sustain conviction for manslaughter as against contention that killing was in self-defense.

5. Criminal Law.—Testimony, rendered unintelligible because of absence of plat used in connection therewith, will be presumed to support verdict.

6. Criminal Law—Limiting Arguments by Accused's Attorneys to One Hour Held Not Abuse of Discretion.—In homicide prosecution, where Commonwealth introduced but fourteen witnesses, limiting arguments of counsel for accused to one hour held not abuse of discretion, notwithstnding accused was limited to one argument, though he had two attorneys.

DAUGHERTY & BARRETT, A. J. MAY, EDW. L. ALLEN, JOHN CAUDILL and BALLARD M. JAMES for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER DRURY—. Affirming.

The appellant, whom we will call the defendant, was charged by indictment with the murder of Oscar Preston. He was convicted of manslaughter and his punishment fixed at confinement in the penitentiary for fourteen years. He has set out in his motion for a new trial seven alleged errors as grounds therefor, but of these he has discussed only three in his brief, so the others must be treated as waived. Caudill v. Caudill, 172 Ky. 460, 189 S. W. 431; McCorkle v. Chapman, 181 Ky. 607, 205 S. W. 682.

During the course of the trial the Commonwealth offered and was permitted, over defendant's objection, to introduce in evidence a photograph of Preston, which shows the deceased to be a young man of pleasing appearance, perfectly sober, in perfect good humor and perfectly dressed, whereas defendant claims that at the time he shot him, deceased was crazed with drink, in a

perfect rage of anger, and his clothing in disorder. We are willing to admit that the introduction of this photograph was improper. It was immaterial and incompetent, but we can not say that it was prejudicial. The photograph merely gives to the jury an idea of the appearance of the man when in a normal state, and the Commonwealth might have proven that by some of the witnesses, hence we can not see how he was prejudiced by the photograph, though we admit its introduction was error.

His next contention is that he had to shoot this young man in his necessary self-defense, and that his conviction is flagrantly against the evidence. If the evidence offered by the Commonwealth is to be believed, the defendant shot Preston with little, if any, provocation or excuse. Defendant owned a hardware store and not far from this store the deceased owned and conducted a drug store and restaurant. Defendant had remarked to one witness between nine and ten o'clock on the day of the killing that he was going to kill Preston before dark. By another witness it was shown that some days after the shooting he had said to him that he had his shotgun ready. On the day of the killing, deceased was drunk, and had been in this hardware store in the morning and had used some very insulting language to defendant. When he returned in the afternoon, defendant shot him almost the moment he got in the door, if we understand the evidence.

Out of the fourteen witnesses introduced by the Commonwealth, eleven of them in their evidence made frequent reference to a plat which was introduced in evidence, but was not brought to this court. When a plat is used, it is almost impossible for us to understand the evidence unless we have it before us. We are not permitted to guess at what the testimony was, and whenever we come to parts of the evidence which are unintelligible because of the absence of the plat, we must conclude that this evidence tended to support the verdict.

Just before the shooting, Cox was sitting in a chair just outside of his store. Two customers approached, and he went in the store to wait on them. One of these wanted to buy a knife and the other wanted to look at some fountain pens. Cox's account of the killing is this:

"I reached in and got the knives out and laid them down on the top of the case, and about that time

my brother holloed from back near the door, 'Look out, Andy, he will shoot you,' and I turned my head over my left shoulder like that and saw Preston about right there (indicating near the door) and he had a gun in his right hand and when I first saw him he had the gun up and he walked toward this counter, toward me, and I passed behind this glass show case to the safe. I keep a shotgun sitting there all the time. And when I looked again he was coming right about there (indicating a point behind the counter inside the opening). By that time I had got hold of the shot gun and as I brought it up he ran back out there and disappeared out of my sight on account of the show case, and when I got straight up he threw his right hand around Peters' side, and his face was over Peters' left shoulder just like that, and as he thrust the gun around toward me I had the shot gun in my hand and I threw it up and fired."

In contradiction of Cox's account of the killing, we have that of these two customers, Mr. William Hart and Levy Peters. Mr. Hart said he was looking at a knife and indicated on the plat his position in the store, but as the plat is not here, that does not mean anything to us. He says the first notice he had of any trouble, he heard the gun fire, and he ran out the door. He saw Mr. Peters go out the door shot and bleeding, and he saw Preston lying on the floor. He saw no weapon on or about Preston. While he was looking at the knife he had seen no man come by him and go behind the counter, and he had heard no scuffle or any running over the floor before the shot was fired. He heard no one say, "Look out." In fact, he had not heard a word, and the first he heard was the shot. Peters says he was looking at some fountain pens. The first he knew of any trouble some one said "Look out," and just as he looked up the gun fired; that he never saw Preston at all and Preston could not have been behind him with his arm around him, as Cox testified, without the witness knowing it. He said he had heard no noise behind him. The evidence of these witnesses would indicate that Preston was shot as soon as he came in the store and that the statement of Cox that deceased had a gun drawn and was running around over the store and was endeavoring to kill Cox, is untrue. This was a small building, only 20 feet wide and 48 feet long, and there is no probability that the things Cox

claims happened could have happened without these men hearing or seeing something. They are supported by the evidence of Ottis Swim, who was in the rear of the store. They are further supported, and Cox is contradicted by witnesses who say that they saw the dead man's body examined shortly after the killing, and that one pistol was taken out of his left hip pocket and one out of his right front pants pocket; also by witnesses who say they saw Mr. Preston enter the store and almost immediately heard the gun fire. If the defendant had observed what we said about a plat in the case of Conley v. Com., 208 Ky. 538, 271 S. W. 566, we might have had a better understanding of this evidence, but with what we have before us, it appears that instead of this verdict being flagrantly against the evidence, it is abundantly supported by the evidence.

His next complaint is that the court erred to his prejudice in limiting the arguments to one hour on the side, and insists that he had two attorneys whom he desired to have argue this case, and that when the time was limited to one hour, that that necessarily limited him to one argument. It appears to us that what we said in the case of Mannin v. Com., 212 Ky. 529, 279 S. W. 945, is conclusive authority against his contention. Finding no error in the record prejudicial to defendant, the judgment must be and it is affirmed.