## Conners v. Commonwealth of Kentucky

(Decided February 5, 1913.)

### Appeal from Jefferson Circuit Court.
(Criminal Division.)

1. Criminal Law—Indictment—Trial—Conflict of Evidence.—When Judgment in Criminal Case Will Not Be Reversed.—Where the evidence is conflicting upon some material points, and the statements of some of the witnesses for the defendant cannot be reconciled with the evidence for the Commonwealth, the question is for the jury, and a judgment in a criminal case will not be reversed because the jury believes one set of witnesses rather than another.

2. Rape—Trial of One Charged With Rape—Confession of Accused—When Will Not Warrant Conviction—Instruction—Prejudicial Error—Identity of Accused.—In this case it is shown conclusively that the crime was committed, and the only question involved is one of identity. Upon this issue it was prejudicial error for the court to submit to the jury in an instruction whether certain statements of appellant amounted to a confession. It was proper to permit his statements to go to the jury in evidence, but not to suggest to the jury, when there was but the one issue of identity, that these statements might be construed as a confession.

**3.**     Criminal Law—Improper Statement of Police Officer Upon Arrest of Accused.—It was improper for the police officer to testify that the other police officers when they brought accused to the station house, said to him: ''We have got Conners;'' and it was improper to permit him to testify that he left instructions when he went off duty the night before, for his men to be on the lookout for accused. And it was likewise improper to permit another one of the police officers to testify that they had other reasons to suspect accused. The injection of such statements by the police officers into the testimony was calculated to make an erroneous impression upon the jury.

JOSEPH E. CONKLING and CHARLES CARROLL, for appellant.

JAMES GARNETT, Attorney-General, OVERTON S. HOGAN, Assistant Attorney-General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER.—Reversing.

At the March term, 1912, of the Jefferson Circuit court, appellant was indicted for rape, charged to have been committed upon the person of Rosaline Grabowski, a child of nine years of age.

At the April term he was placed on trial and the jury failed to agree.

At the May term he was again placed on trial and the jury found him guilty, and fixed his punishment at death. His motion and grounds for a new trial having been overruled, he prosecutes this appeal.

The evidence shows that Rosaline Grabowski was on the 19th of February, 1912, a student of St. Peter's Catholic School at Seventeenth and Garland avenue in Louisville; that between 9:15 and 9:45 A. M., she was permitted by her teacher to go to the toilet room connected with the school and near thereto; that after she entered the closet, a man came on his tiptoes and took hold of her, and wanted her to hug and kiss him; that she was very much frightened and started to scream, and that he put his hand over her mouth and told her he would cut her head off, and throw her down the hole; that he unbuttoned her clothes and his own and hurt her. She immediately afterwards returned to the school and told her teacher that there was a man in the toilet room, and that she had been attacked, and that the man was a heavy-set, elderly man, and wore an overcoat and a derby hat, and had his hat pulled down over his eyes, and had a bottle of whiskey in his pocket.

At 11:30 that morning she was sent home. Shortly

thereafter, a police officer went to her home and after procuring a description of the criminal from her arrested a young man, whom she failed to identify. The next morning, appellant, who is 59 years of age was arrested in his working clothes, and together with two policemen, who were in citizen's clothes, taken before her, and she positively identified appellant as the man who had committed the assault.

On the trial the prosecuting witness stated in substance as set forth above, except that she said that the man who assaulted her did not have on an overcoat.

A saloon keeper named Fellman, whose place of business is just across the street from St. Peter's school, and two other men who were in his saloon at the time, stated that Conners was in there that morning, one of them fixing the time at about ten o'clock, another at between 9:30 and 10:30, and another at between ten and eleven, and Fellman stated that Connors had a bottle which he filled with whiskey for him while he was there.

Alma Osterman a domestic or assistant cook at St. Peter's School states that while she was in the kitchen that morning between 9:00 and 9:30, she saw a man at the closets and saw him walk in; that she is sure appellant was the man, that she recognized his walk, he had one shoulder lower than the other, and that she had since seen him; that she did not recognize his face because there was a fence and some lattice work between her and him, and that the kitchen was forty or fifty feet away from the closets.

The officers who were present when the little girl identified Conners testified to the identification, and in addition, that the defendant at the time denied the charge and said to the little girl that she was mistaken. Some of the officers also testified that after the identification, appellant said that if he could get out of this any way right, he would never drink another drop, and if he had done this thing, he certainly must have been drunk or crazy, and asked them to charge him with disorderly conduct, and said to them, that if he was charged with rape they had just as well hang him, that he knew he was gone if he was charged with rape; but always denied that he was guilty. It further appears that when appellant was arrested, he had on no drawers, but two pair of pants and a new undershirt, but there was found in his room a new pair of drawers which had never

been worn; that there was no blood on any of his clothes, but afterwards when the police went to the distillery where he had been at work, and got his overcoat, they found in it a rag with some blood spots on it, and that appellant said that he had hurt his fingers and wiped them on the rag, but his fingers showed no sign of cut or hurt.

The evidence is also clear that appellant was drunk when he was arrested and had been on a protracted spree for some days.

Appellant himself did not testify on the last trial, but it appears that he had been for some time working on the Belmont Distillery which is about a square and a half from St. Peter's School, and at which place his brother had a contract.

James W. Conners, appellant's brother, testified that on the morning of the 19th of February, 1912, he got to the Belmont Distillery at 9:20 A. M.; that appellant had been working there and was there at half past nine, and when he first saw him had just come from the branding house, and that he saw and talked to him several times between then and eleven o'clock, that he was not out of his sight from 9:30 to 11 o'clock; that it was raining that morning and all the workmen quit work at 10:20 as shown by the time sheet.

Charles Waterman states that he was at work at the distillery on that day and saw John Conners there that morning, that he was standing in the branding room between nine and ten o'clock.

John Hicks states that he was at work there that day and saw John there several times that morning, and saw him leave the branding house about nine o'clock and go out towards where his brother Jim was.

Harold Knopf states that he was at work at the distillery that morning and saw appellant there five or six times, and saw him talking to his brother about 9:15 and knew he had not left there before 9:30.

Henry Smith states that he was at work at the distillery on that day, and from where he was working saw John Conners every ten or fifteen minutes, and saw him talking to his brother Jim and the engineer, Leeson, between nine and nine-thirty, and again about 9:45, and that he talked to his brother Jim until ten o'clock or later, and that he had on an overcoat and hat.

William Cowell states that he was at work there that

morning, that he saw John there off and on from nine A. M. to one P. M.

B. J. Poor says he saw appellant there at 9:30 and that he talked to his brother a half hour or so, that witness stayed there until 11:30 and that John was around there then.

Because of the serious nature of this charge and the extreme penalty inflicted, we have thus gone into the evidence in detail.

It is first urged as ground for reversal that the verdict is palpably against the evidence and the judgment should be reversed for that reason, but we cannot concur in this view. While the evidence is very conflicting upon some material points, and the statements of some of the witnesses for the defendant cannot be reconciled with the evidence for the Commonwealth, these questions are for the jury, and this court will not reverse a judgment in a criminal case because the jury believes one set of witnesses as against another. Wilson v. Commonwealth, (140 Ky. 1).

The only question seriously relied upon for reversal is instruction number three, which is as follows, to-wit:

"If the jury believe from the evidence, to the exclusion of a reasonable doubt, that any statement or statements detailed in evidence as having been made by defendant amounted to a confession by him of guilt of the offense referred to in the foregoing instructions, they are instructed that a confession of the accused, if any there was, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed."

The instruction was evidently based on section 240 of the criminal code, which is as follows:

"A confession of a defendant unless made in open court will not warrant conviction unless accompanied with other proof that such an offense was committed."

In this case it is shown conclusively that the crime was committed, and the only question involved is one of identity. Upon this issue it was prejudicial error for the court to submit to the jury in an instruction whether certain statements of appellant amounted to a confession. It was proper to permit his statements to go to the jury in evidence, but not to suggest to the jury, when there was but the one issue of identity, that these statements might be construed as a confession.

It can be easily seen what might have been the effect upon the minds of the jury of having the court refer in an instruction to those statements of appellant and say to them they might determine whether those statements amounted to a confession; and especially when taken in connection with the evidence on the question of identity.

In the case of Gilbert v. Commonwealth, 111 Ky. 795, the appellant complained of the failure of the court to instruct the jury that he could not be convicted on extra-judicial confessions alone, although the *corpus delicti* had been conclusively shown; and the court in discussing that question said:

"If the uncontradicted evidence in the case establishes the *corpus delicti*, the question arises as to the necessity of telling the jury that it could not convict the accused upon any confessions out of court which he may have made. Under the plain language of the Code and the Patterson and Wiggington cases, the jury is the sole judge as to whether the defendant should be convicted on confessions where the *corpus delicti* has been proven. It is unlike a case where the conviction is sought upon the testimony of an accomplice alone, because the Code expressly provides that it requires other testimony, tending to show the guilt of the accused, in addition to that of an accomplice, to authorize a conviction. Under the testimony in this case, it would have been misleading to the jury and prejudicial to the defendant to have given the instruction in question, because the jury might have inferred that the court was of the opinion that the appellant had made a confession."

The case of Spicer v. Commonwealth, 21 R., 528, is one where two appellants had been convicted of hog stealing and some of their statements made to witnesses were thought by the lower court to justify an instruction under section 240 of the Criminal Code, although there, was no evidence of a confession, and the court in discussing that instruction said:

"There is no testimony in the record that either of the appellants ever made a confession or acknowledgement of their guilt of the offense charged. On the contrary, they most emphatically deny their guilt, and testify, both on the examining and in the final trial, to facts which conduce to show their innocence. We

therefore, think that this instruction was misleading to the jury and highly prejudicial to appellants.

"The court in substance told the jury that appellants had confessed their guilt, but that, notwithstanding such confession, they must not convict them unless there was other proof tending to connect them with the crime. The instruction seems to have no application to any fact which was in evidence on the trial, and should not have been given."

As this case must be tried over, we deem it proper to suggest, that it was improper for the police officer, Hogan, to testify that the other police officers when they brought appellant to the station house, said to him, "we have got Conners;" and it was also improper to permit him to testify that he left instructions when he went off duty the night before, for his men to be on the lookout for appellant.

And likewise the statement of another one of the police officers, that they had other reasons to suspect Conners, was improper.

The injection of such statements by the police officers into the testimony was calculated to make an erroneous impression upon the jury.

Judgment is reversed with directions to grant appellant a new trial.