## Black v. Commonwealth.

(Decided May 29, 1913.)

### Appeal from Carlisle Circuit Court.

1. Criminal Law—Confession.—Where, in a prosecution for rape, the prosecuting witness said that the accused came into her room, and a witness testified that he heard the accused say that he went into the room for the purpose of getting his grandmother's money, this was not a confession of guilt, and did not authorize an instruction under section 240 of the criminal code.

2. Criminal Law—Unlawfully Detaining a Woman Against Her Will—Instruction.—Where the evidence for the Commonwealth showed that the accused entered the room of the prosecuting witness and laid his hands upon her and took hold of her against her will and consent, it was not improper, after telling the jury that if the accused unlawfully and willfully took and detained the prosecuting witness against her will and consent with the intent to have carnal knowledge of her, they should find him guilty to instruct the jury that if the accused laid his hands upon or took hold of the prosecuting witness, against her will and consent, and with the intent to have carnal knowledge of her, this would be a taking and detaining in the meaning of the instruction, although it is not essential that this definition of unlawful detaining should be given.

3. Criminal Law—Misconduct of Juror—How Made Available on Motion for New Trial.—When a new trial is asked on the ground that a juror has been guilty of misconduct, the party seeking a new trial on this ground should do so at the earliest moment after he has received information of the misconduct complained of, and should file his affidavit stating when he received this information. If the party seeking a new trial on this ground fails to do this, he will be deemed to have waived his right to a new trial on this ground after there has been a verdict against him.

4. Criminal Law—Weight of Evidence for the Jury.—In criminal cases we will not interfere with the finding of the jury on the ground that the verdict is not sustained by sufficient evidence, unless it affirmatively appears that the verdict is so contrary to the evidence as to make it appear that it was the result of passion or prejudice.

5. Criminal Law—Form of Judgment Where Accused is Under Twenty-one.—Where a minor defendant is convicted of a felony, the court should in its judgment direct his confinement in the house of reform until he attains his majority, and if his term of

punishment be not then ended, that he be transferred to the penitentiary.

JOHN E. KANE, B. C. SEAY for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Law Clerk for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, under an indictment charging him with unlawfully detaining a woman against her will, was tried and convicted, and on this appeal he asks a reversal of the judgment against him.

It appears from the record that in September, 1912, the prosecuting witness, Miss Beulah Watson, was teaching school and boarding at the house of John Black, a brother of appellant. She testifies that appellant came to the house while they were at supper and was then introduced to her and that when she retired to her room for the night about nine o'clock she left appellant sitting on the porch with his grandmother. That a window in the room she occupied looked out on the porch where she left appellant. She further testifies:

"I went to bed about nine o'clock and pulled the window shades and locked the door, and I went to bed, and I had been to sleep but a short time, about half past nine or nine-forty, somewhere along there; some one had their hand on my arm and one across me, and I jumped up and hallooed and some one said: 'Don't be afraid; it is me,' and I recognized his voice as Siguesman Black's, and I jumped up and grabbed his arm and I run my hand up his arm and felt the hairs on it and he was in his shirt sleeves and his sleeves rolled up to his elbow like I had seen Siguesman Black's at supper, and I jumped up out of bed and began hallooing for John Black to come there, that some one was in my room, and I went through my door out in the hall and he went out at the window while I was going out at the door."

There is also evidence to the effect that the screen on the outside of the window, through which the man entered, was pulled off, and that early on the following morning Miss Watson telephoned to her parents, who came as soon as they could, and she then told them what had happened and who her assailant was.

John Cothes, also a witness for the Commonwealth, said that a day or two after this, he heard the appellant

make the following statement: "I jes heard him talk. he was not talking to me. The boys were teasing him about it and he said he went in there; thought it was his grand-mother's room and was trying to get her money."

Testifying in his own behalf, appellant, who is under twenty-one years of age, admitted that he was at the house of John Black at the time testified to by Miss Watson, and that after supper he sat on the front porch talking to his grandmother, but denied that he assauited or went into the room of Miss Watson. He said that about the time or a few minutes after his grandmother retired for the night, he left the house of his brother and went to the home of George Polivick, who lived in the neighborhood, and after remaining there for a while, in company with Polivick, he went to the house of Louis Polivick, and from there to the town of Bardwell, where he spent the night in a livery stable with Tom Slaughter.

A good many other circumstances throwing some light on the affair were testified to by witnesses in behalf of both the Commonwealth and the appellant, but we have related enough of the evidence to illustrate the grounds relied on for reversal. The first assigned error relates to instruction number one given by the trial court, which is as follows:

"The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the defendant, Siguesman Black, in this county and before the finding of this indictment, unlawfully and wilfully took and detained the prosecuting witness, Beulah Watson, against her will and consent, with the intent to have carnal knowledge of her himself, then and in that event the jury will find defendant guilty.

"And the court further instructs the jury that if they believe from the evidence beyond a reasonable doubt that the defendant laid his hands upon or took hold of said Beulah Watson against her will and consent, and with the intent to have carnal knowledge of her himself, this would be a taking and detaining in the meaning of the instructions."

The criticism of this instruction relates to the last paragraph in which the court defined the acts that would constitute a violation of the statute by appellant. The argument is made that it was error to single out the facts stated in this paragraph of the instruction and advise the jury that their existence constituted guilt. In support of this position we are referred to Polly v. Common-

wealth, 16 Ky. Law Rep., 203, in which it was held to be error under the facts of that case to instruct the jury that they should find the defendant guilty if he detained the prosecuting witness by getting in bed with her and by putting his hands and arms about her. The facts of that case, however, are so radically different from the facts in this case that what the court said in criticism of the instruction there given is not at all applicable to the instruction in the record before us. In that case the accused admitted that by inadvertance or mistake he did get in the same bed with the prosecuting witness, and thinking that she was his wife, put his hand upon her. Here the appellant denied that he was in the room where the prosecuting witness was. If he did take hold of her and lay his hands upon her, there is no claim that it was done through mistake or inadvertence or thoughtlessness.

If he was guilty of the conduct ascribed to him by the prosecuting witness, he committed an offense under the statute, and whether he was guilty or not depended on the weight the jury might attach to her evidence and other circumstances shown in the case. Section 1158 of the Kentucky Statutes, under which the indictment was found, does not describe in detail the acts that constitute the offense, merely providing that "whoever shall unlawfully take or detain any woman against her will," shall be punished, and we do not think it was improper for the court to advise the jury what constituted an unlawful taking or detaining. Certain it is that in this case the instruction was not prejudicial, because the only direct evidence of an unlawful taking or detention was furnished by the prosecuting witness and the instruction did no more than state the acts of which she testified the appellant was guilty. If her evidence was true, and the jury evidently believed it was, the appellant did take and detain her in the meaning of the statute: McKey v. Commonwealth, 145 Ky., 450; Bowman v. Commonwealth, 31 Ky. Law Rep., 828; Gibson v. Commonwealth, 31 Ky. Law Rep., 945; Stewart v. Commonwealth, 141 Ky., 523; Jones v. Commonwealth, 28 Ky. Law Rep., 213; Copenhaver v. Commonwealth, 31 Ky. Law Rep., 1161.

Another error assigned is the failure of the trial court to instruct the jury on the subject of a confession, in reference to the evidence of John Cothes. The statement Cothes testified he heard appellant make was not a confession, and for this reason alone an instruction on the

subject of a confession would have been manifestly improper.

It is further said that a new trial should be granted on account of the misconduct of W. H. Boswell, one of the jury. The affidavits of three persons were filed in connection with the motion for a new trial, in which each stated that they heard Boswell, about a week before the trial, say that "from what I am told, I think that Siguesman Black should be punished for what he did." Passing the sufficiency of this alleged statement of Boswell to authorize the trial court in setting aside the verdict, the affidavits were not presented in such a way as to make them available for the purpose intended in their introduction. These affidavits were filed in support of one of the grounds relied on for a new trial, but the affiants did not state when they first informed appellant or his counsel of the information they had concerning Boswell, nor do we find in the record any affidavit by appellant or his counsel relating when they were first advised by these affiants what Boswell said.

When a new trial is asked on the ground that a juror has been guilty of misconduct, the person seeking a new trial on this ground should do so at the earliest moment after he has received information of the misconduct complained of, and should file his affidavit stating when he obtained the information. If the party seeking a new trial on this ground fails to do this, he will be deemed to have waived his right to rely on the misconduct as a ground for a new trial after there has been a verdict against him. Upon this point we said in Drake v. Drake, 107 Ky., 32:

"It does not appear but that the misconduct of the juror was known to the plaintiffs before the trial closed. If it was, they were bound to make the objection at the time, and not wait till after a verdict against them. Their omission to state that allegation in their motion renders it insufficient.

"A party should not, with knowledge of misconduct on the part of the jury, conceal it from the court, and take the chance of a verdict in his favor, with the expectation of having it set aside if adverse to him."

It is also insisted that the verdict is palpably against the evidence, and for this reason a new trial should be granted. The evidence against appellant is not by any means conclusive, but yet there was sufficient to take the case to the jury and to support its finding. Under the

facts the jury might reasonably have found the defendant not guilty, but evidently they believed that the evidence of Miss Watson in connection with the other incriminating circumstances developed on the trial, were sufficient to show the guilt of the accused, and we do not feel authorized to interfere with their conclusion.

There is seldom a criminal case tried in which there is not sharp conflict in the evidence introduced for the Commonwealth and the accused, and we have adopted the sound rule of not interfering in criminal cases, or indeed civil cases, with the finding of a jury upon disputed questions of fact unless it affirmatively, and we might say, at first blush, appears that their verdict is so contrary to the evidence as to make it appear that it was the result of passion or prejudice.

It seems that appellant was only seventeen years of age, and it was, therefore, adjudged by the court that he be taken to the reform school at Lexington, "there to remain until he arrives at the age of twenty-one, and then to be transferred to the penitentiary and be there confined, the confinement in the reform school and in the penitentiary to be not less than two years or more than seven years." The form of this judgment is objected to, but the objection is not well taken. We had substantially this question before us in Calico v. Commonwealth, 145 Ky., 641, and we there said:

"Where a minor defendant is convicted of felony in the circuit court, the court, upon its own motion, should, upon proof that he is a minor and the offense his first, by its judgment direct his confinement in the house of reform until he attains his majority, and if his term of punishment for the felony be not then ended, that he be transferred to the penitentiary until it expires." To the same effect are Washington v. Commonwealth, 143 Ky., 602, and Henson v. Commonwealth, 148 Ky., 631.

Upon the whole case we see no reason for disturbing the judgment, and it is affirmed.