# Sargent et al. v. Commonwealth
## (two cases).

(Decided March 24, 1936.)

WM. LEWIS for appellants.

B. M. VINCENT, Attorney General, and ROSCOE VINCENT, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Jobe and Lee Sargent were jointly indicted at the February term, 1935, of the Laurel circuit court charged with stealing a horse, the property of John Webb. At the same term of the court they were also jointly indicted charged with stealing a horse, the property of Luther McKnight. They were tried under the two indictments at the same time. The jury's verdict fixed the punishment of each at two years in the state reformatory, in each prosecution. The judgment sentencing them was entered accordingly from which they appeal, insisting that the court erred in admitting in behalf of the commonwealth incompetent evidence; in overruling at the conclusion of the evidence of the commonwealth and at the conclusion of all the evidence their request for a peremptory instruction; the verdict is palpably and flagrantly against the evidence, and the court failed to give the jury "the whole law of the case." A review of the evidence is required to dispose of these grounds.

On the night of the 29th of December, 1934, John Webb was the owner of a horse which was in a barn about 100 yards from his residence. During the night, it with a saddle and bridle, was taken and carried away from his premises without his knowledge and consent. Luther McKnight lived in the same community near Webb's home. He was on that night the owner of a horse which was in his barn near his residence. It, with a saddle and bridle, was taken and carried away without his knowledge and consent. A road from the home of John Webb to that of Jobe and Lee Sargent passed the home of Luther McKnight and Joe Owens. Some time in the early part of the night, it rained. Early the next morning Webb, on going to his barn, discovered the absence of his horse, saddle, and bridle. His horse had recently been shod, and its tracks led from the barn, which he traced to within about 30 feet of the home of Jobe and Lee Sargent; from there it had traveled about one-half mile to the home of Vandy, where it was found. On the next morning after Luther McKnight's horse, saddle, and bridle had been taken, he discovered its tracks leading from his barn. It was fresh-shod. Its tracks with those of Webb's were identified and followed to the home of Jobe and Lee Sargent, thence to Vandy's. At the time the horses were located at Vandy's, Mc-

Knight's had on the saddle and the headstall of the bridle. Webb's saddle was found a few hundred yards from the home of Jobe and Lee Sargent covered with hay. Joe Owens, a deputy sheriff, resided on the highway between the home of the Sargents and Webb's and McKnight's. The horses' tracks had traveled the highway to the home of Joe Owens, thence away, and had returned to it; then continued to the Sargent's home. During the early part of the night some one or more persons riding horses had fired shots into the home of Owens. After so doing, they went away and returned and again fired shots into his residence. He discovered next morning horses' tracks and shotgun shells of Kleanbore brand in the road near his home. He, with Walter Reams, a justice of the peace, and others, joined Webb and McKnight in tracking the horses from his home in the highway to Sargents' home, thence to Vandy's. He and others were present when Webb's saddle was found near the Sargents' home. Jobe and Lee Sargent were not at home at the time. Webb, McKnight and others were engaged in following the tracks of the horses, locating them and Webb's saddle. On the afternoon on which the horses and saddles were located, Virgil Vandy, Jobe and Lee Sargent and Chester Benge were at the home of Luther Garland. Ernest Garland, Luther Garland and wife were present. At that time in a conversation about Webb's and McKnight's horses, in the presence of Jobe and Lee Sargent, Virgil Vandy stated: "That blazed face mare is a good saddle mare." Jobe Sargent said: "It was a good thing they (the people hunting for the horses) didn't come up that hollow, that they might have got them, but that he would have tried his best to have got his part of them. I would like to punch a few in Walter Reams and Joe Owens"—Walter Reams, a justice of the peace, and Joe Owens, deputy sheriff, both of whom had assisted in tracking and locating the horses. The hollow referred to by Jobe Sargent was one in which his brother lived and where he had been that afternoon. Lee Sargent had shotgun shells in his hands and remarked: "If they can stand this, they can stand anything." He also stated, "they had shot into Walter Ream's house," and "If they were game to come after him." The shells which Lee Sargent at that time had in his

hands were "twelve gauge shotgun—Kleanbore—" the same brand which had been found by Joe Owens that morning near his home. At the time Virgil Vandy, Jobe and Lee Sargent were making the above statements, the Sargents had a twelve gauge shotgun and a .38 pistol.

The Sargents' defense was an alibi, supported by the testimony of themselves, their family and the Vandy family. In rebuttal, witnesses of the commonwealth testified the general reputation of Jobe and Lee Sargent for morals, truth, and veracity was bad.

Virgil Vandy explained his statement in reference to the saddle qualities of the mare by saying that he was at his father's home on the morning Webb's and McKnight's horses were found there and he had ridden the mare, and in this way knew she was a "saddle mare." Conceding that his statement to the Garlands was incompetent, his explanation of it rendered its admission harmless. The statements of the Garlands narrating those of Jobe and Lee Sargent were relevant and competent.

The evidence is convincing that the court properly overruled their request for a peremptory instruction and submitted the issues to the jury. It likewise establishes that the verdict of the jury is not palpably or flagrantly against the weight of the evidence. It points unerringly to the guilt of the accused, though it is circumstantial. Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407.

Instruction No. 1 is in the usual form and was proper. Instruction No. 2 directed the jury that if the horses were stolen as set out in instruction No. 2 by either of the Sargents, and "the other was present at the time and near enough so to do, and did then and there, aid, abet, assist, counsel, encourage, advise or command such taking, stealing, etc.," then to find such one guilty and fix his punishment as set out in instruction No. 1. The two horses were stolen and ridden along the highway together, and only one of them could be ridden by each of the accused. Their statements to the Garlands and the shotgun shells show they were present at the time, participating in the taking and carrying away both horses. Instruction No. 2 was authorized by the evidence. The fourth directed

that if it believed from the evidence beyond a reasonable doubt the horses were taken and carried away as set out in instructions Nos. 1 and 2, but without a felonious intent to deprive the owners thereof permanently and convert the same to their own use, to find either, or both of them, guilty of a misdemeanor. Another defined the duty of the jury if it had a reasonable doubt.

The Sargents earnestly insist that the court should have given an instruction under section 240, Criminal Code of Practice, which reads:

"A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

This argument overlooks the distinction between an admission and a confession. An admission is a statement of an accused which does not directly involve an acknowledgement of guilt or a criminal intent. A confession is a voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the act charged and discloses the circumstances of the act or the share and participation which he had in it. This defense presupposes that the person making a confession has theretofore been charged with the crime in which he confessed he had participated. A mere statement of an accused does not authorize an instruction, nor require one, under section 240. Vermillion v. Commonwealth, 210 Ky. 645, 276 S. W. 560; Ratliff v. Commonwealth, 182 Ky. 246, 206 S. W. 497.

The statements of the Sargents to the Garlands do not amount to a confession, though against their interest and utterly inconsistent with their innocence. Therefore, an instruction under section 240 was not necessary. Brown v. Commonwealth, 219 Ky. 406, 293 S. W. 975; Black v. Commonwealth, 154 Ky. 144, 156 S. W. 1043; Cargill v. Commonwealth, 93 Ky. 578, 20 S. W. 782, 14 Ky. Law Rep. 517. They merely identified them with the commission of the crime with which they were charged. It would therefore have been prejudicial to have given an instruction under section 240.

434

Conners v. Commonwealth, 152 Ky. 57, 153 S. W. 16. Further, other proof showed the crime had been committed. Hence, it was not proper to instruct under section 240. Clary v. Commonwealth, 163 Ky. 48, 173 S. W. 171.

Perceiving no error prejudicial to the substantial rights of the accused, the judgment is affirmed.