## Hedger v. Commonwealth.

June 18, 1943.

732

Marcus C. Redwine for appellant.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, Woodrow Hedger, was convicted in the Clark circuit court of uttering a forged check drawn on the People's State Bank & Trust Company of Winchester, Kentucky, for the sum of $18.25, payable to James Maston, and signed "H. B. Spencer," which was a forgery and known to be such by defendant, and which offense is one denounced by section 1185 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, 432.100 and 434.130 KRS, his punishment being fixed at confinement in the penitentiary for two years. From the judgment pronounced on the verdict, after his motion for a new trial was overruled, he prosecutes this appeal, urging through his counsel two grounds as alleged prejudicial errors authorizing a reversal of the judgment, which are: (1) Incompetent evidence for the commonwealth admitted over defendant's objections, and (2) insufficiency of the evidence—with the alleged incompetent testimony eliminated—to sustain the verdict. We will dispose of them in the order named.

■ The alleged incompetent testimony complained of in error (1) consists in proof of statements made by defendant in which he referred to another check drawn

on the same person which defendant cashed, at the solicitation of the draftsman, at one of the stores of the Kroger Grocery Company in Lexington. That check got into the case while H. H. Spencer, whose name was forged to both checks, was testifying to what defendant had stated to him in the presence of the Chief of Police of Lexington after defendant was apprehended on separate charges for uttering both checks, and the statement was made after witness had stated that defendant voluntarily admitted cashing both checks and said he saw Ed Hatton forge the name of Spencer to the check that was cashed at the Kroger Grocery Company. However, witness stated that defendant denied having seen Hatton sign the name of Spencer to the check cashed by defendant at the J. C. Penney Company store and for the uttering of which this indictment was found. Witness also stated that defendant admitted that he had seen Ed Hatton practicing on imitating the handwriting of Spencer and, perhaps, others, and that Hatton could copy his (Spencer's) name perfectly. Ed Hatton, who gave the check to defendant for the purpose of having it cashed, had a younger brother by the name of Floyd Hatton, and we gather from the evidence that prior to the commission of the offense by defendant here involved they were not only associates but were confined at the same time in the jail of Fayette county.

Defendant admitted to the Chief of Police in the presence of Spencer that Ed Hatton gave to him the check which he cashed at the Penney store, but he denied having seen Ed Hatton sign the name of Spencer thereto. He also stated that he knew no such person as James Maston, the payee of that check, nor did any other witness testifying in the case know any such person." Neither of the Hattons testified at the trial of defendant, and he seeks to establish his innocence solely upon his own testimony to the effect that he did not know the check he cashed at the Penney store was forged, or that James Maston was a fictitious person—though admitting, as we have stated, that he himself knew no such person. He also admitted that he bought at the Penney store with a part of the proceeds of the check some merchandise amounting to $2.69, and that he paid to Ed Hatton the balance of the proceeds of the check, except 31c, which, with the amount of the account, was $3 that he said Ed Hatton owed him. However, both Spencer and the Chief of Police testified that defendant in talking to them made

no claim that Ed Hatton owed him $3, or any amount, but on the contrary, "he said (defendant) he (Ed Hatton) gave him $3.00 for cashing it."

The Chief of Police in giving his testimony was asked and answered:

"Q. Mr. Lisle, I will show you this particular check. Have you seen that check before? A. Yes sir.

"Q. Was he questioned about that check? A. He was questioned about all the checks. We didn't question him about any individual check, we questioned him about all and he picked this check out.

"Q. When you picked up that particular check what did he say about it? A. He picked out this check and another check and said he got two checks cashed.

"Q. What did he say about it, if anything else? Counsel for defendant objects to another check.

"Q. What did he say about that check? A. Said he got one cashed. One at Penney's and one at Kroger's. I think this is the Penney check.

"Q. He say anything about who wrote the signature on the check? A. He said Ed Hatton wrote it.

"Q. He tell you he saw him? A. Yes sir.

"Q. What did he say Ed Hatton said to him when he gave it to him? Did Ed Hatton ask him to do anything? A. He said he did. Said he asked him to take it and get it cashed and they would divide the money.

"Q. Did he say he divided the money with Ed Hatton? A. Ed and Floyd too, he said Floyd went with him."

It will be noticed that the witness in that testimony was talking about the Penney check. The lady clerk, to whom the check was presented in payment of the merchandise bought by defendant at the Penney store, testified that she was quite certain that the check when presented to her was not endorsed by the fictitious payee, James Maston, and that defendant wrote that name on the back of it. However, she stated it was remotely possible that she might be mistaken in that regard, but that her best recollection was that defendant did endorse the check at that time, and in her presence. The check accompanies the record brought to this court and the name,

James Maston, in the body of it is in a different handwriting from that of the same name endorsed thereon. So that, it was evidently made by a different person than the one who drafted and forged the check.

From the evidence introduced by the commonwealth as so briefly outlined, it is clear that defendant knew at the time he cashed the check, as described, at the Penney store, that it was forged, and also that the name of the payee was a fictitious person. Under numerous decisions listed under section 240 of our Criminal Code of Practice we have held that the section did not apply where the corpus delicti was proven, which in this case consisted of the forgery of the check and its utterance by defendant. The burden was then shifted to him to show that he acted without knowledge of such invalidity. Furthermore, the section does not apply unless the proven statements of defendant amounted to a confession as employed in that section, as was held by us in the cases of Ratliff v. Commonwealth, 182 Ky. 426, 206 S. W. 497; Eldridge v. Commonwealth, 229 Ky. 499, 17 S. W. (2d) 403; Herron v. Commonwealth, 247 Ky. 220, 56 S. W. (2d) 974, and Sargent v. Commonwealth, 263 Ky. 429, 92 S. W. (2d) 770, 772. In them we held that the section of the Criminal Code, supra, did not apply to mere admission statements made by defendant not embodying a confession or admission of his guilt, but steadfastly denying it. In the Sargent case we stated the distinction in this language: "An admission is a statement of an accused which does not directly involve an acknowledgment of guilt or a criminal intent. A confession is a voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the act charged and discloses the circumstances of the act or the share and participation which he had in it. * * * The statements of the Sargents to the Garlands do not amount to a confession, though against their interest and utterly inconsistent with their innocence. Therefore, an instruction under section 240 was not necessary. Brown v. Commonwealth, 219 Ky. 406, 293 S. W. 975; Black v. Commonwealth, 154 Ky. 144, 156 S. W. 1043; Cargill v. Commonwealth, 93 Ky. 578, 20 S. W. 782, 14 Ky. Law Rep. 517. They merely identified them with the commission of the crime with which they were charged."

It is, therefore, clear that the court did not err in giving the instruction contended for, for the two reasons (a) that the requirements of the section were met by the proof introduced by the commonwealth, and (b) that the statements amounting only to guilty admissions on the part of the defendant did not constitute a "confession" as employed in the section.

■ The complained of testimony with reference to the check that defendant cashed at the Kroger Grocery Company is likewise without merit, even if defendant in his admission to the officer had not first brought that check into the case. It is true that, generally speaking, proof of other crimes is not admissible, but to that general rule there are many exceptions, among which is that they may be admitted to prove a general course of systematic conduct in the closely successive commission of similar offenses. The proof clearly shows in this case that the trio of Ed Hatton, Floyd Hatton and defendant were engaged in obtaining money from other people by the issuing and cashing of forged checks, and that the chief part played by defendant in that process was to cash the checks after they had been forged by the Hattons, or one of them, who was an expert in imitating handwriting. Furthermore, according to the testimony of the commonwealth, defendant admitted that he received compensation for discharging his part in such fraudulent transactions by receiving a portion of the proceeds. Clearly, under the exception referred to the testimony concerning the check cashed by defendant at the Kroger Grocery was competent. However, defendant's counsel moved the court to admonish the jury that the evidence with reference to the check cashed at the Kroger Grocery Company should be considered by it only as a circumstance "showing knowledge but in no other sense" which the court did in an admonishment given to the jury as requested. If, therefore, the evidence was incompetent defendant obtained the benefit of confining its relevancy to the purpose for which it was introduced, and to prove which it was competent.

Wherefore, for the reasons stated, the judgment is affirmed.