**Calon W. WHACK, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 10, 1958.

J. E. Wise, Elizabethtown, for appellant.

Jo M. Ferguson, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

STEWART, Judge.

Calon W. Whack was convicted of the offense of wilfully murdering his wife, Lula Mae Whack, and the punishment imposed by the jury verdict was imprisonment for life. He has appealed from the

judgment entered, urging these grounds for reversal: (1) The court erred in overruling his motion to suppress the evidence contained in certain alleged confessions made by him; and (2) the court erred in overruling his motion for a directed verdict. As these two grounds dovetail into each other we shall consider them together.

Whack, a twenty-year-old soldier stationed at Ft. Knox, lived with his wife and two infant children in Elizabethtown. On the night of February 22, 1957, at about 8:30 or 8:45, the Whack residence was destroyed by fire. His wife and both children were in the house at the time and perished. Whack was not at home when the fire was discovered, and when he reached his residence the fire had progressed so far that he was unable to go in the house.

It appears from the evidence that Whack had left the house about twenty or thirty minutes before the fire was discovered by neighbors and, when so discovered, the flames and smoke were so intense that no one was able to enter the house or to make any attempt to rescue the occupants. The suspicious circumstances of the terrific fire and the quick death of Whack's wife and children caused an investigation to be started by the chief of the Elizabethtown fire department, the chief of police of that city and by one Harry A. DeMunsch, a military criminal investigator assigned to the Provost Marshal at Ft. Knox.

■ DeMunsch testified Whack was brought to the Provost Marshal's office about 9:30 the evening of the fire and before being questioned was advised of his rights under Article 31 of the Military Code of Justice, 50 U.S.C.A. § 602. Briefly stated, this Article is to the effect that the person interrogated shall not be compelled to answer any question which may tend to incriminate him, and that the person interrogated must first be informed of the nature of the accusation made against him and advised that any statement he

gives out may be used as evidence against him. According to DeMunsch, Whack was advised that an investigation was being conducted in connection with the death of his wife and two children. At this time appellant made a verbal statement concerning his knowledge of the incident. What he said on this occasion, however, does not appear in the record.

Whack was given emergency leave to take the bodies of his wife and children to his home in North Carolina for burial. When he returned to Ft. Knox on March 18, 1957, he was promptly taken into custody by DeMunsch, the military criminal investigator. On this same day, in the presence of DeMunsch and one Loomis, another military criminal investigator, Whack signed a statement detailing the events which led up to the fire. DeMunsch testified that Whack made four statements before he was charged with any offense. The second one was written out on his own initiative on March 20th, and the third was written as he dictated it on March 22nd, but was not signed. In the meantime, Whack requested that he be given a lie detector test and, acquiescing with this wish of his, he was taken to Ft. Hayes at Columbus, Ohio, where such a test was administered. On this trip, while going to and coming from Ft. Hayes, he narrated verbally how the fire had occurred. On March 23rd, after he was returned to Ft. Knox, he was arrested on a warrant that issued from Elizabethtown Police Court and charged with the crime of the wilful murder of his wife, Lula Mae Whack. He was indicted for the same offense at the September Term, 1957, of the Hardin Circuit Court.

DeMunsch partly told and partly read into the record, the statement Whack purportedly made on March 22nd. As indicated above, this was an oral account of this tragic mishap. This statement does not differ greatly from the written one he previously signed on March 18th. According to these recitals Whack said that he built a fire in the stove with paper, coal

and kerosene. The stove was located in the front room of the three-room house occupied by him and his family. In starting the fire, he spilled some kerosene down the front of the stove and into the ashpan and onto a metal pan on which the stove was sitting. He believed some of the spilled kerosene ran under a burlap sack containing his coal supply which was placed near the stove. Also, he noted at the time that the fire was burning in the metal ashpan under the stove. At this point his wife made some remark at which he took offense. She then placed her arm on his shoulder, whereupon he struck her with his fist, knocking her to the floor, and he does not recall that she moved after that. The fire was burning under the stove, spreading to the burlap sack which was filled with the coal, when he left the house. He kicked the can of kerosene over, spilling about a gallon of oil on the floor, as he departed. Whack stated he had had several drinks of whiskey on this occasion but declared he was not intoxicated.

Witnesses stated that Whack, when he first realized his house was burning, said "Lord have mercy, what have I done?" The coroner testified that Lula Mae Whack was burned over almost 100% of her body but that actual death was caused by carbon monoxide poisoning. He was unable to determine whether she was unconscious prior to the fire. He and others testified that the can containing the kerosene was ruptured from an explosion.

Whack, for his defense, testified that the actual events of the night of February 22nd were that he built a fire with coal, oil and paper in the stove after 8:15. He did not quarrel with his wife, but left the house to deliver a message to an army comrade at a neighbor's house across the street about 8:30. At 8:55 the fire alarm sounded and Whack rushed from the neighbor's house to discover his own house on fire. He claimed he did not spill any oil outside the stove and that there was no fire, except in the stove, when he left the house.

Whack asserts the statements in question were obtained from him in violation of KRS 422.110(1), a part of the so-called "Anti-Sweating Act", which reads:

"No peace officer, or other person having lawful custody of any person *charged with crime,* shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by plying him with questions, or extort information to be used against him on his trial by threats or other wrongful means, nor shall the person having custody of the accused permit any other person to do so."

In Sargent v. Commonwealth, 263 Ky. 429, 92 S.W.2d 770, 772, a confession was defined as " * * * a voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the act charged and discloses the circumstances of the act or the share and participation which he had in it. * * *" See also Hedger v. Commonwealth, 294 Ky. 731, 172 S.W.2d 560, wherein many cases are cited reiterating the above definition. Thus it is clear that the Anti-Sweating Act only applies where the person is in custody charged with a crime and is questioned in violation of the Act in an attempt to obtain information concerning his connection with or knowledge of the offense after he has been arrested. See Marsee v. Hunt's Adm'x, 246 Ky. 503, 55 S.W.2d 376.

It will be recalled that all the statements secured from Whack were obtained while he was under the exclusive control of the Provost Marshal at Ft. Knox. During all this time the military criminal investigators were the ones who questioned him. It was not until March 23rd, which was after his four statements had been made, that he was placed under arrest by virtue of a warrant that issued from the Elizabethtown Police Court and charged with the crime of which he was convicted.

Therefore, in view of the undisputed fact that all the statements purportedly made by Whack were made before he was taken into custody in the name of the Commonwealth and charged with the commission of a crime, it is evident that such statements were not procured in violation of KRS 422.110(1).

■ We think we should add that, aside from Whack's testimony that the statements were exacted from him by third-degree tactics, the record does not show elsewhere that the statements attributable to him were secured by threats, coercion or other wrongful means.

It is next claimed the requirements of Section 240 of the Criminal Code of Practice were not met, with the result that Whack's motion for a directed verdict should have been sustained. This Code provision reads: "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

■ It has been pointed out that the statements Whack gave to the military criminal investigators do not amount to a confession within the purview of the Anti-Sweating Act. It necessarily follows, and we have uniformly held, that when statements do not constitute a confession, so that the provisions of the Act may be invoked, Section 240 of the Criminal Code of Practice is inapplicable. See Hedger v. Commonwealth, cited above.

■ A recapitulation of the evidence shows, in our opinion, the jury could reasonably believe that Calon W. Whack feloniously rendered his wife, Lula Mae Whack, unconscious by striking her with his fist and then, after callously and wantonly causing kerosene to be spilled upon the floor of the room in which she lay, the floor of which was already in flames around the stove, abandoned her to be burned to death.

Wherefore, the judgment is affirmed.

EBLEN, Judge (concurring).

While I agree with the result in this case, I do not subscribe to that part of the opinion declaring that if statements do not amount to a confession within the purview of the Anti-Sweating Act, they are not a confession under Section 240 of the Criminal Code of Practice. I find it unnecessary to determine if the statements amount to a confession under Section 240 of the Criminal Code, since there was other proof that such an offense was committed. That removes the matter from the application of Section 240, and I defer my own views on the interrelation of the Anti-Sweating Act and Section 240 until such is necessary to a decision.

BIRD and MONTGOMERY, JJ., join in this opinion.